366 F.3d 161
 Duane ZIEMBA, Plaintiff-Appellant,
v.
George WEZNER, I/O, John Armstrong, I/O, P. Calcinari, I/O, R. Muccino, I/O, P. Peters, I/O, E. Saundry, I/O, J. Bulger, I/O, T. Torres, I/O, J. Bandzak, I/O, Brian Zawalinski, I/O, Cicero Callender, I/O, Garland Shell, I/O, D.J. Harris, I/O, Sean Cullagh, I/O, William O'Connor, I/O, Jonathan Moore, I/O, All Defendants, Defendants-Appellees.
 Docket No. 02-0340.
 United States Court of Appeals, Second Circuit.
 Submitted April 6, 2004.
 Decided April 23, 2004.
 
 Duane Ziemba, pro se, Somers, CT, for Plaintiff-Appellant (on submission).
 Matthew B. Beizer, Assistant Attorney General for the State of Connecticut (Richard Blumenthal, Attorney General, on the brief), Hartford, CT, for Defendants-Appellees (on submission).
 Before: WALKER, Chief Judge, VAN GRAAFEILAND and STRAUB, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff-Appellant Duane Ziemba, pro se, appeals from an order of the United States District Court for the District of Connecticut (Donna F. Martinez, Magistrate Judge) dismissing his 42 U.S.C. § 1983 action on the pleadings pursuant to Fed.R.Civ.P. 12(c) for failing to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).
 
 
 2
 In February 2002, Ziemba filed an amended § 1983 complaint, alleging violations of rights conferred under the Eighth and Fourteenth Amendments of the United States Constitution, as well as Connecticut state law. In the complaint, he alleges the following facts to support his claims: While was incarcerated at Cheshire Correctional Facility, he had filed an emergency grievance requesting that prison officials protect him from his cell mate, Patrick Wright, because Wright had a mental disorder and had a history of assaultive behavior and keeping weapons in his cell. Prison officials took no measures to protect him, and, as a result, on September 9, 1997, Wright stabbed him. After the stabbing, he was placed in a stripped segregation cell, denied medical care, and threatened by a prison official, who also instructed other prison officials not to place any mention of the stabbing on the prison record.
 
 
 3
 Ziemba further alleges that he was taken to a holding cell at the Middletown Courthouse for a previously scheduled court appearance, at which time the courthouse sheriffs and other officials refused to allow Ziemba to appear in court due to his shocking condition; and that the Middletown Court officials ultimately telephoned Cheshire Correctional Facility in an attempt to assist Ziemba. Upon returning to Cheshire, Ziemba alleges, various officer defendants, in retaliation for the telephone call from Middletown, continued to detain him in segregation and refused him food and medical care.
 
 
 4
 Ziemba also alleges that prison officials escorted him to an empty shower room on September 12, 1997, and threatened him, intimidated him with police dogs, beat him, and sprayed pepper spray in his eyes and mouth. After the beating, Ziemba alleges, prison officials placed him in four-point restraints on a bed in the segregation unit, where he was denied medical care; the same day, prison officials transferred him to Northern Correctional Facility, where he was given medical attention after being observed by the medical staff.
 
 
 5
 At his behest, Ziemba's family sent numerous complaints regarding the above-described incidents to John Armstrong, Commissioner of the Connecticut Department of Corrections, which went unanswered and unreturned. Ultimately, his family initiated an FBI investigation.
 
 
 6
 The State of Connecticut answered Ziemba's amended complaint, asserting, inter alia, that Ziemba had failed to exhaust his administrative remedies, as the PLRA requires. The State then moved for judgment on the pleadings. Ziemba opposed the Rule 12(c) motion, arguing (1) that the State was precluded from asserting the exhaustion defense because prison officials prevented Ziemba from exhausting his administrative remedies by beating him, threatening him, denying him grievance forms and writing implements, and transferring him to another prison; (2) that his complaints to the FBI constituted an informal exhaustion of his administrative grievances sufficient to satisfy the PLRA's exhaustion requirement; and (3) that, in any case, the ongoing FBI investigation rendered his claims non-grievable under Connecticut Department of Corrections Administrative Directive 9.6. On October 29, 2002, the district court granted the State's motion for judgment on the pleadings and dismissed Ziemba's § 1983 action for failure to exhaust. Ziemba filed a timely appeal.
 
 
 DISCUSSION
 
 
 7
 We review a district court's judgment on the pleadings de novo. See King v. Am. Airlines, Inc., 284 F.3d 352, 356 (2d Cir.2002). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir.1999).
 
 
 8
 Under the PLRA, 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." As the Supreme Court clarified in Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. at 532. Following the Nussle decision, we held that "retaliation claim[s] fit[] within the category of `inmate suits about prison life,' and therefore must be preceded by the exhaustion of state administrative remedies available." Lawrence v. Goord, 304 F.3d 198, 200 (2d Cir.2002). Accordingly, Ziemba's claims fall within the purview of the PLRA's exhaustion requirement.
 
 
 9
 However, on appeal, Ziemba argues that the State should have been estopped from asserting exhaustion as an affirmative defense. Although Ziemba did not use the technical term "estoppel" in the court below, we have reviewed the record on appeal and are satisfied that the argument was effectively presented to the district court when his counsel argued that Ziemba's inability to exhaust "was the direct result of the defendants' actions ..."
 
 
 10
 It is now well-settled in this circuit that exhaustion under the PLRA is not jurisdictional, see Richardson v. Goord, 347 F.3d 431, 434 (2d Cir.2003), and that it is an affirmative defense, see Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir.1999). The Fifth Circuit has held that the PLRA's exhaustion requirement "may be subject to certain defenses such as [] estoppel." See Wright v. Hollingsworth, 260 F.3d 357, 358 n. 2 (5th Cir.2001); see also Lewis v. Washington, 300 F.3d 829, 834 (7th Cir.2002) (finding the Fifth Circuit's ruling in Wright persuasive "because nonjurisdictional prerequisites to suit in federal court are typically subject to equitable estoppel," but declining to decide whether the PLRA's exhaustion defense is subject to equitable estoppel because the prisoner did not satisfy the requirements for equitable estoppel).
 
 
 11
 As a matter of first impression in this circuit, we now adopt the holding of Wright, 260 F.3d at 358 n. 2, and hold that the affirmative defense of exhaustion is subject to estoppel. Accordingly, because the district court erroneously did not address Ziemba's claim that defendants' actions may have estopped the State from asserting the exhaustion defense, we vacate and remand the decision of the district court.
 
 
 12
 On remand, the district court is directed to consider Ziemba's claim that estoppel bars the State's assertion of the exhaustion defense. Because such consideration will require the court to look beyond the pleadings and the documents attached to the pleadings, the district court must allow factual development and address the estoppel claim at the summary judgment stage. See Fed.R.Civ.P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56"); Fed.R.Civ.P. 56.
 
 
 13
 We note that Ziemba also argues on appeal that his complaints to the FBI, and the subsequent FBI investigation, amounted to exhaustion of his administrative remedies. We express no opinion here as to whether the FBI investigation satisfies the exhaustion requirement. We observe, however, that we have recently appointed counsel in a group of cases to test the limits of unconventional exhaustion, which, when decided, may prove relevant to the district court's analysis of exhaustion on remand. See, e.g., Hemphill v. State of New York, No. 02-0164; Abney v. Dep't of Corr., No. 02-0241; Ortiz v. McBride, 323 F.3d 191; Johnson v. Reno, No. 02-0145.
 
 
 CONCLUSION
 
 
 14
 For the foregoing reasons and with the foregoing instructions, the district court's order dismissing Ziemba's suit is hereby VACATED and REMANDED.